Jeff Reich—067250
Shane Reich—222948
**THE REICH LAW FIRM**
8441 N. M<small>ILLBROOK</small>, S<small>UITE</small> 104
F<small>RESNO</small>, CA 93720
—
559-440-1191
Fax: (559) 432-9092

Attorney for Plaintiffs EFRIM RENTERIA and TALISHA RENTERIA

(SPACE BELOW FOR FILING STAMP ONLY)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO

| | |
|---|---|
| EFRIM RENTERIA, TALISHA RENTERIA,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>SHINGLE SPRINGS BAND OF MIWOK INDIANS; SHINGLE SPRINGS BAND OF MIWOK INDIANS TRIBAL COUNCIL; SHINGLE SPRINGS BAND OF MIWOK INDIANS TRIBAL COURT; CHRISTINE WILLIAMS, in her official capacity as Judge of the Shingle Springs Band of Miwok Indians Tribal Court; REGINA CUELLAR, in her official capacity as member of the Shingle Springs Band of Miwok Indians Tribal Council and individually as party in interest seeking guardianship of the minors;<br><br>　　Defendants. | Case No.: 2:16-cv-1685- MCE-AC<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>1. Tribal Court Lacks Jurisdiction<br>2. Violation of Fourteenth Amendment Due Process Rights<br>3. Injunctive Relief |

　　Plaintiffs, EFRIM RENTERIA and TALISHA RENTERIA, file this complaint against defendants and allege as follows:

<u>NATURE OF THE ACTION</u>

　　1.　　Plaintiffs bring this action to request review of the decision of the Shingle Springs Band of Miwok Indians Tribal Court on the grounds that a) the tribal court lacks subject matter jurisdiction, and b) plaintiffs have been denied due process because they have had no full and fair

opportunity to litigate their matters at issue. Principles of equity and the requirement of full and fair opportunity to litigate weigh against recognizing the tribal court's decision, including among other things the close relationship between the tribal court, the tribal council, and the individual tribal officials, and there are grounds for this Court to carefully scrutinize the tribal court proceedings in this case.

2. This action is based on the following legal grounds: (a) defendants conducted proceedings and issued an order when they do not have subject matter jurisdiction; and (b) defendants have violated plaintiffs' Fourteenth Amendment Due Process rights;

## PARTIES

3. Plaintiffs, EFRIM RENTERIA and TALISHA RENTERIA (hereinafter "plaintiffs"), are individuals, are the great uncle and great aunt of the minors who are the subject of the subject guardianship proceedings, and in their capacity as maternal family members of the minors served as guardians of the minors.

4. The individual Defendants are CHRISTINE WILLIAMS, in her official capacity as Judge of the Shingle Springs Band of Miwok Indians Tribal Court (hereinafter "Tribal judge"); REGINA CUELLAR (hereinafter "Cuellar"), in her official capacity as member of the Shingle Springs Band of Miwok Indians Tribal Council and individually as party in interest seeking guardianship of the minors. Both are being sued in their official capacity and are named defendants as a result of their actions and decisions of the SHINGLE SPRINGS BAND OF MIWOK INDIANS; SHINGLE SPRINGS BAND OF MIWOK INDIANS TRIBAL COUNCIL, and; SHINGLE SPRINGS BAND OF MIWOK INDIANS TRIBAL COURT. REGINA CUELLAR is also sued as party in interest seeking guardianship of the minors.

5. Defendants SHINGLE SPRINGS BAND OF MIWOK INDIANS (hereinafter "Tribe"); SHINGLE SPRINGS BAND OF MIWOK INDIANS TRIBAL COUNCIL (hereinafter "Tribal council"); SHINGLE SPRINGS BAND OF MIWOK INDIANS TRIBAL COURT (hereinafter "Tribal court"); are Indian Tribes and/or agencies of Indian Tribes responsible for managing the affairs and judicial proceedings of the Tribe.

JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked pursuant to 28 *U.S.C.* §1331, *Boozer v. Wilder* 381 F.3d 931 at 934 (9th Cir. 2004); *Montana v. United States*, 440 U.S. 147 at 164 (U.S. 1979)).

5. Jurisdiction exists on the bases of both lack of subject matter jurisdiction and denial of due process, pursuant to *Wilson v. Marchington*, 127 F.3d 805, 807 (9th Cir. 1997)

6. In addition, this Court has subject matter jurisdiction to consider plaintiffs' claims which may arise under the Indian Civil Rights Act ("ICRA"), 25 *U.S.C.* 1302 (8) which prohibits defendants from taking actions which deny "any person within its jurisdiction the equal protection of its laws or deprive any person of property without due process of law." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49 (1978)

7. Individual officers and agents of the Tribe have exceeded the lawful authority they and the Tribes are capable of exercising under federal law as defined by *Montana v. United States*, 440 U.S. 147 at 164 (U.S. 1979)). Accordingly, they are not cloaked with the sovereign immunity of the Tribes and are subject to this Court's declaratory and injunctive powers under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908).

8. Tribal Court remedies have been exhausted pursuant to Shingle Springs Band of Miwok Indians, Tribal Court Ordinance Article III, Chapter 1, section 4 which states, "The decision of the Tribal Court shall be final and no appeals available." Tribal remedies must be exhausted before the question is addressed by the District Court. (See *Iowa Mutual Insurance Co. v. Laplante* 480 U.S. 9 at 15-16 (1987). This case is ready for review.

9. Venue is proper in United States District Court for the Eastern District of California under 28 *U.S.C.* § 1391(b) (2). The events giving rise to this action occurred in this judicial district and the plaintiffs reside in this judicial district.

FACTS OF THE CASE

10. The Tribe is a federally recognized Indian tribe.

///

11. The minors' father was member of the Tribe, was married to the minors' mother, who is not a member of the Tribe, and they had **[redacted]** (collectively "subject minors"). Plaintiffs are informed and believe, based on copies of records generated by the Tribe, that the minors' father is approximately 2% Indian.

12. Plaintiffs are informed and believe that the minors never resided or were domiciled on the Tribal reservation. From November of 2013 until December of 2015, the minors **[redacted]** and for that period of two plus years were very familiar with the maternal extended family and especially close emotionally to plaintiffs, who are their great grand aunt and uncle. The maternal family has been minors' family and the minors have had very little contact with their paternal family and almost no contact with the Tribe.

13. The **[redacted]**

14. On January 5, 2016, the minors' paternal grandmother, sister of Cuellar, appeared at plaintiffs' house in the **[redacted]** , thrust a copy of a document into plaintiffs' hands and then forcibly removed A.C (younger). and N.C. Plaintiffs thought it wise not to physically intervene and did not.

15. Plaintiffs later learned the document was an emergency order, obtained from the Tribal court, which allegedly gave temporary custody/guardianship to the minors' paternal family.

16. On January 11, 2016, an Objection and Opposition to Tribal Court Jurisdiction was filed.

17. On January 13, 2016, in the Tribal court, the Tribal judge issued an order that plaintiffs would have temporary custody of the minors pending investigation of plaintiffs' home and on January 22, 2016, the judge issued an order giving plaintiffs temporary guardianship of the minors, and the order provided for visitation for the minors with the paternal family.

//

18. Initially, the minors' paternal grandmother, sister of Cuellar, sought guardianship, but at the hearing on January 13, 2016, questions and problems arose regarding the background of the paternal grandmother. Within a very short period of time, Cuellar stepped in and began petitioning the Tribal court for guardianship of the minors.

19. On January 28, 2016, the Tribe and the Tribal council passed a resolution declaring that preference for appointment of guardians by the Tribal court is to be given to "Tribally approved foster homes." Plaintiffs are informed and believe that Cuellar influenced the passing of this resolution specifically to give her advantage in the minors' guardianship proceeding. Plaintiffs have been informed that Cuellar's home is a tribally approved foster home, but plaintiffs are unaware of when such approval may have been issued.

20. On April 13, 2016 the Tribal court held a settlement conference and the Tribal court judge indicated her intention to grant Cuellar custody based on Indian culture, the benefits of Tribal services and the Tribal council's declaration that preference be given to tribally approved foster homes.  There was no consideration given to the best interests of the subject minors.

21. During the time of the process of the above-described guardianship proceedings plaintiffs became aware **[redacted].**

22. On or about June 9, 2016, plaintiffs were informed by **[redacted]**

minors..

//

The Reich Law Firm
8441 N. Millbrook, #104
Fresno, CA 93720
559-440-1191

23. The Tribal court set a date of June 1, 2016, for determination of guardianship and ordered Tribal services to communicate **[redacted]** Plaintiffs are informed and believe that one person from Tribal services made only two short telephone calls to Tulare County regarding information and further are informed and believe that Tribal services were influenced to refrain from any serious investigation in an effort to influence the matter in Cuellar's favor.

24. Prior to the hearing on June 1, 2016 plaintiffs submitted a trial brief in which they asserted, among other things, that:

   a. Pursuant to the Indian Child Welfare Act and Public Law 280, California Law should be followed in the guardianship proceeding;

   b. Pursuant to the Indian Child Welfare Act and to California Law the appropriate standard to be followed is the best interests of the child;

   c. If the parents of the children are not available then the order of preference is to the person or persons in whose home the child has been living in a wholesome and stable environment;

   d. The wishes of the parents are to be seriously considered;

   e. Cuellar does not meet the qualification for foster parents in the State of California due to evidence of domestic abuse in her home and alcohol-related criminal convictions;

   f. Due to the close relationship between Cuellar, the Tribal council, the Tribal court and the Tribal judge there is a conflict of interest that will result in injustice;

   g. The Tribal court does not have jurisdiction over the subject guardianship proceeding.

25. On June 1, 2016, the Tribal court held a hearing regarding the petition for guardianship of the minors and made the following statements and/or findings:

   a. The Indian Child Welfare Act gives jurisdiction of this matter to the Tribal court;

   b. In response to plaintiffs' request that guardianship not be decided until there is some conclusive information regarding **[redacted],** the Tribal judge stated the **[redacted]** is not being considered for placement. Plaintiffs stated that placement with Cuellar was equivalent to placement **[redacted]**.

The Reich Law Firm
8441 N. Millbrook, #104
Fresno, CA 93720
559-440-1191

6

First Amended Complaint

   The Tribal judge responded that she could not become the guarantor of the safety of the minors;

c. When plaintiffs further requested that guardianship not be decided that day because the need to obtain more information regarding **[redacted]** the Tribal judge stated that nothing is shutting down this proceeding and a decision will be made today;

d. In response to plaintiffs' request that the Tribal court consider **[redacted]**

said, that she only wanted to hear from Tribal services;

e. In response to plaintiffs' protestations that things were going on behind the scenes with the proceedings of the Tribal court, the Tribe and Tribal services and that it seemed "the deck was stacked against them," the Tribal judge responded that "Native Americans have felt that way about State court proceedings for years and now you know how they felt."

26. The Tribal court failed to consider plaintiffs' arguments set forth in paragraph 24, with the exception of the jurisdictional issue. Plaintiffs are informed and believe that the Tribal court and the Tribal court judge failed to consider the applicable law, failed to consider the best interests of the subject children, was interested only in pleasing the members of the Tribe and made her subsequent ruling based completely on her bias to the Tribe and the Indian people.

27. On June 3, 2016, the Tribal court issued an order that included a finding that the Tribal court was properly exercising jurisdiction in the matter and an order that Cuellar is appointed guardian. The Tribal court also issued a visitation order that the minors have ongoing regular contact with the paternal extended family, including **[redacted]**

28. The minors went for visitation with Cuellar and the paternal family on June 4 and 5, 2016, and returned to Petitioners Sunday evening, June 5. **[redacted]**

//

29. On Monday, June 6, 2016 plaintiffs **[redacted]**

30. On Friday, June 10, 2016, plaintiffs spoke to **[redacted]**

31. On June 12, 2016, plaintiffs **[redacted]**

32. On June 17, 2016, personnel with the Tulare County District Attorney's Office told plaintiffs that **[redacted]**

33. On June 11, 2016, plaintiffs filed a **[redacted]**

34. The safety and well-being of the minors is of utmost importance and plaintiffs seek injunctive relief **[redacted]** required to serve the best interest of the minors.

## FIRST CLAIM FOR RELIEF

### Defendant Tribal Court Lacks Jurisdiction

35. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 34, inclusive, of this complaint.

36. The Tribal court has reached beyond the boundaries of the Tribe, invaded the home of plaintiffs, who are not members of the Tribe, and have taken the subject minors residing therein.

1 The Tribe and Tribal Court should not be allowed to act as outlined above, effectively spiriting the subject minors from the family they know, in the place they have lived for more than two years—the ONLY home and family they have known—and move the subject minors to the Tribe's reservation and the Tribe's court for custody proceedings, and then contend the Tribal court has "exclusive" jurisdiction over the custody issues involving the subject minors.

37. The Indian Child Welfare Act (25 *USCS* §§ 1901 et seq.) does not apply to the facts of this case as the subject proceedings in Tribal court are not a "child custody proceeding" as defined in 25 *U.S.C.* § 1903, and the Indian Child Welfare Act was enacted only to address child welfare practices that separated Indian children from their families and was not intended to facilitate a transfer of the child to an Indian custodian.

38. Even if the Indian Child Welfare Act applied, it does not divest state courts of their jurisdiction over children of Indian descent living off reservation, there is to be concurrent jurisdiction in state and tribal courts. Additionally, the Tribal court lacks jurisdiction on basis of domicile or wardship order and the subject minors were not domiciled nor residing on the Tribe's reservation at the time the guardianship action was filed, which was necessary for the Tribal court to have jurisdiction.

39. Even if the Indian Child Welfare Act applies, California is a *Public Law* 280 State and therefore has jurisdiction over Indian child custody proceedings—Congress intended California Law to be followed.

40. In California, the superior court has jurisdiction of guardianship proceedings and if the proposed ward is a California resident, venue lies in the county in which the subject minors reside, Tulare County.

41. When reviewing a tribal court decision regarding tribal jurisdiction, the District Court reviews the Tribal court's finding de novo.

//
//
//
//

### SECOND CLAIM FOR RELIEF

### Violation of Fourteenth Amendment Due Process against All Defendants

42. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 34, inclusive, of this complaint.

43. Defendants have denied plaintiffs an opportunity for a full and fair hearing before an impartial tribunal, any hearings conducted herein were not conducted properly, and defendants have shown prejudice and bias in the Tribal court proceedings and the system of governing laws.

### The Tribal Court Had No Incentive to Consider Fully the Issues and
### Effective Consideration Was Limited By
### The Nature of the Relationship Between the Tribal Court, the Tribal Council and Cuellar

44. As set forth above, the bias of the entire process which is the subject of this action, is evident by the "foster home" assertions and the passage of the declaration in favor of "Tribally approved foster homes" especially in light of the timing of these actions.

45. Further, the bias of the entire process which is the subject of this action is evident by the Tribal judge's remarks as set forth in paragraph 25 b through e.

46. Further, the bias of the entire process which is the subject of this action, is evident by the Tribal judge's failure to consider the issues presented by plaintiffs at trial as set forth in paragraph 24.

47. Further, the bias of the entire process which is the subject of this action, is evident by Tribal services' failure to effectively communicate with officials in Tulare County.

48. These allegations of bias and error have been presented to the Tribal Court both orally in court (see paragraph 24e) to which the Tribal judge responded that "Native Americans have felt that way about State court proceedings for years and now you know how they felt" and have been presented in plaintiffs' trial brief.

//

//

//

### Plaintiffs Have Had No Opportunity for a Full and Fair Hearing
### In That There Was No Opportunity for an Appeal

49. Defendants have denied plaintiffs any opportunity for appeal of the Tribal court decision, in that the Shingle Springs Band of Miwok Indians, Tribal Court Ordinance Article III, Chapter 1, section 4 which states, "The decision of the Tribal Court shall be final and no appeals available."

### Plaintiffs Have Had No Opportunity for a Full and Fair Hearing
### Due to the Tribal Court's Refusal to Follow Applicable Law

50. Although the Tribal court has established procedures for proceedings in the Tribal court, the Tribal court judge failed and refused to follow those procedures.

51. Plaintiffs are informed and believe that due to personal bias the Tribal court made her decision without following the applicable law. The decision of the Tribal court was issued in a manner that did not accord with the basics of due process.

### Plaintiffs Have Had No Opportunity for a Full and Fair Hearing
### Due to Defendants' Conflict of Interest

52. Cuellar is a member of the Tribal council, by which the Tribal court is established and by which the Tribal judge is employed. Cuellar then seeks to have the Tribal court and Tribal judge appoint her as guardian in this case.

53. Cuellar is a member of the Tribal council, and that Tribal council, after the present matter is in progress, passed an order which effectively expressed preference to Cuellar, which was a patently clear effort to directly benefit Cuellar.

54. The Tribal court judge made clear her personal bias in favor of the Tribe and in favor of Native Americans by her remarks at set forth in paragraph 21 that "Native Americans have felt that way about State court proceedings for years and now you know how they felt."

//
//

55. By any definition of conflict of interest and personal bias, it is very difficult to see how there is no conflict of interest. The decision of the Tribal court was issued in a manner that did not accord with the basics of due process.

<u>Plaintiffs Have Had No Opportunity for a Full and Fair Hearing</u>
<u>Due to Conflict of Interest Arising from Multiple Roles Assumed by a Law Firm In</u>
<u>Representing the Tribe, Tribal Council, Tribal Court and Cuellar</u>

56. Plaintiffs are informed and believe that the law firm of Fredericks Peebles & Morgan LLP has been retained by the Tribe, the Tribal Council and the Tribal Court to assist and advise in legal matters affecting them, including but not limited to drafting rules and ordinances, drafting policies, drafting tribal court rules and ordinances and generally providing legal advice and direction.

57. The law firm of Fredericks Peebles & Morgan LLP represented Cuellar in the Tribal Court guardianship proceedings.

58. The above-mentioned relationships among defendants and the law firm of Fredericks Peebles & Morgan LLP is improper and creates conflict of interest which affected the decision of the Tribal court to be issued in a manner that did not accord with the basics of due process.

<u>Plaintiffs Have Had No Opportunity for a Full and Fair Hearing</u>
<u>Due to the Tribal Court's Refusal to Consider and Rule</u>
<u>on Plaintiffs' Arguments Related to Applicable Law</u>

59. Plaintiffs raised several points of law, as follows:

a. Pursuant to the Indian Child Welfare Act and Public Law 280, California Law should be followed in the guardianship proceeding;

b. Pursuant to the Indian Child Welfare Act and to California Law the appropriate standard to be followed is the best interests of the child;

//

//

c. If the parents of the children are not available then the order of preference is to the person or persons in whose home the child has been living in a wholesome and stable environment;

d. The wishes of the parents are to be seriously considered.

60. Plaintiffs are informed and believe that due to personal bias the Tribal court did not consider the above points of applicable law, did not rule on these points and consequently made her decision without following the law applicable to guardianship proceedings. The decision of the Tribal court was issued in a manner that did not accord with the basics of due process.

<u>Plaintiffs Have Had No Opportunity for a Full and Fair Hearing</u>
<u>Due to the Tribal Court's Refusal to Follow Applicable Law</u>

61. The Tribal court judge failed and refused to follow applicable law, both the Indian Child Welfare Act and California Law, by among other omissions, refusal to obtain and consider the testimony of a qualified expert witness.

62. Plaintiffs are informed and believe that due to personal bias the Tribal court made her decision without following the applicable law. The decision of the Tribal court was issued in a manner that did not accord with the basics of due process.

<u>Plaintiffs Have Had No Opportunity for a Full and Fair Hearing</u>
<u>Due to the Tribal Court's Refusal to Acknowledge Cuellar's Lack of Qualification</u>

63. Cuellar does not meet the qualification for foster parents in the State of California due to evidence of domestic abuse in her home and alcohol-related criminal convictions.

64. Plaintiffs are informed and believe that due to personal bias the Tribal court did not consider the applicable law, did not rule the issue of qualification and consequently made her decision without following the law applicable to guardianship proceedings. The decision of the Tribal court was issued in a manner that did not accord with the basics of due process.

//
//

### THIRD CLAIM FOR RELIEF

#### Injunctive Relief

65.   Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 64, inclusive, of this complaint.

66.   The safety and well-being of the minors is of utmost importance and injunctive relief is necessary to prevent the Tribal Court from intervening further and causing the minors to be placed in custody of Cuellar which would be detrimental to the minors.

67.   Plaintiffs seek a Temporary Restraining Order and/or Preliminary Injunction enjoining the enforcement of the Tribal Court's June 3, 2016, Order Appointing Guardian of Minors, and ordering that plaintiffs are temporary guardians of the minors, pending the resolution of this litigation.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that the Court enter judgment in their favor and against the defendants as follows:

A.   A declaration that the defendant Tribal Court lacks jurisdiction in the subject guardianship proceedings;

B.   A declaration that the actions of defendants' have violated plaintiffs' due process rights;

C.   A declaration that the defendant Tribal Court's June 3, 2016, Order Appointing Guardian of Minors is unconstitutional for violation of due process;

D.   For temporary, preliminary, and/or permanent injunctive relief enjoining the enforcement of the Tribal Court's June 3, 2016, Order Appointing Guardian of Minors, and ordering that plaintiffs are temporary guardians of the minors, pending the resolution of this litigation.

//

//

//

E.	Awarding plaintiffs' costs and reasonable attorney's fees to the extent permitted by law; and,

F.	Granting such other and further relief as to the Court deems just and proper.


Dated: July 18, 2016

                              Respectfully submitted,

                              THE REICH LAW FIRM

By:	/s/ Jeff Reich_____
Jeff Reich, Attorneys for Plaintiffs
EFRIM RENTERIA and TALISHA RENTERIA