1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11    EFRIM RENTERIA, TALISHA              No.  2:16-cv-1685-MCE-AC
      RENTERIA,
12
                    Plaintiffs,
13                                         **MEMORANDUM AND ORDER**
             v.
14
      SHINGLE SPRINGS BAND OF
15    MIWOK INDIANS, et al.,

16                  Defendants.

17

18          Plaintiffs Efrim and Talisha Renteria ("Plaintiffs") bring this action against the

19    Shingle Springs Band of Miwok Indians ("Tribe"), its Tribal Council, its Tribal Court,

20    Christine Williams in her official capacity as the Tribal Court judge, Regina Cuellar in

21    both her official capacity as a member of the Tribal Council (collectively, the "Tribal

22    Defendants") and her individual capacity as the appointed guardian of Plaintiffs' three

23    minor nieces ("Minors"), all of whom are under seven years old.  They seek to prevent

24    the enforcement of Tribal Court's June 3, 2017 Order ("June 3 Order") appointing

25    Defendant Regina Cuellar as the legal guardian of the Minors.  Their Complaint attacks

26    the Tribal Court's jurisdiction over the custody proceedings, and further alleges that the

27    June 3 Order is unenforceable in courts subject to the 14th Amendment of the United

28    States Constitution because the underlying proceedings violated Plaintiffs' due process

                                            1

1 rights.

2      Plaintiffs' Motion for Preliminary Injunction (ECF No. 8) is presently before the

3 Court.  That Motion is GRANTED with respect to Defendant Regina Cuellar in her

4 individual capacity.  All defendants with the exception of Regina Cuellar in her individual

5 capacity are DISMISSED for lack of jurisdiction.

6

7 **BACKGROUND**[1]

8

9      Plaintiffs are the maternal great aunt and uncle of the Minors.[2]  The Minors'

10 parents were killed in a car accident on December 17, 2015.  Their late father was a

11 member of the Tribe, but the Minors resided and were domiciled with their parents in

12 Visalia, California.  They have never resided or been domiciled on tribal lands.

13      Plaintiffs cared for the Minors in the weeks following the accident.  On January 5,

14 2016, members of the children's paternal family appeared at Plaintiffs' house in Visalia,

15 presented a copy of an emergency order issued by the Tribal Court of the Shingle

16 Springs Band of Miwok Indians ("Tribal Court") to Plaintiffs', and forcibly removed the two

17 youngest Minors (the eldest Minor remained hospitalized from injuries sustained in the

18 car accident that killed her parents).  On January 22, 2016, the Tribal Court held a

19 review hearing regarding guardianship, appointed Plaintiffs as temporary guardians for

20 the Minors, and established a schedule of visitations for the paternal family.

21      Beginning in February 2016, the two older children repeatedly reported that their

22 paternal step-grandfather ("Joseph") sexually abused them during their visits.  Plaintiffs

23 reported the abuse to the Visalia Police Department and the Tulare County Health &

24 Human Services Agency. In the days that followed Plaintiffs' initial police report, the

25 children were interviewed outside of Plaintiffs' presence on three separate occasions by

26      [1] The following recitation of facts is taken, sometimes verbatim, from the Complaint and the papers

27 filed on the docket in connection with Plaintiffs' Motion for Preliminary Injunction.

     [2] In an effort to be cognizant of the best interests of the Minors, details that could lead to their

28 identification and allegations are not included in this Order.

1   social workers with no connection to the family. The two older children continued to

2   report instances of sexual abuse by Joseph to these social workers. After Plaintiffs made

3   these reports, the Tribal Court modified the visitation order such that Joseph was not to

4   have access to the Minors.

5          On June 3, 2016, the Tribal Court appointed Defendant Regina Cuellar as the

6   Minors' permanent guardian over Plaintiffs' competing petition and objections.

7   Defendant Cuellar's appointment became effective June 12, 2016.  At the same time,

8   the Tribal Court issued a visitation order that failed to restrict Joseph's access to the

9   Minors.  The Minors then went for visitation with Defendant Regina Cuellar on June 4

10  and 5.

11         The failure to restrict Joseph's access to the Minors during this visit resulted in yet

12  another instance of alleged sexual abuse.  Plaintiffs declined to give custody of the

13  Minors to the paternal family on June 12, and caused a "Good Cause" Report to be filed

14  with the Tulare County District Attorney.  Plaintiffs then filed this action on July 21, 2016.

15  They seek a declaration that the Tribal Court lacked jurisdiction to appoint a guardian for

16  the Minors in the first instance, a declaration that the proceedings that led to the

17  appointment of Regina Cuellar violated Plaintiffs' due process rights, and an injunction

18  preventing the enforcement of the June 3 Order outside of tribal lands.   .

19         The Court issued a Temporary Restraining Order ("TRO") enjoining enforcement

20  of the Tribal Court's June 3 Order pending a hearing on Plaintiffs' Motion for Preliminary

21  Injunction.  ECF No. 19.  After the Court issued the TRO, the Tribal Court ordered

22  Plaintiffs to appear at another hearing to discuss visitation for an important tribal cultural

23  event known as the "Big Time."  As a result of that order, Plaintiffs requested a

24  supplemental TRO enjoining the enforcement of any additional Tribal Court orders in the

25  custody proceeding pending the resolution of Plaintiffs' Motion.  The Court denied

26  Plaintiffs' application for a supplemental TRO for failure to comply with Local Rule 231.

27  ECF No. 49.

28         Defendants oppose Plaintiffs' Motion.  They contend that the Court lacks

3

1  jurisdiction over the Tribal Defendants, and that Plaintiffs' action cannot proceed solely

2  against Defendant Cuellar in her individual capacity under Rule 19(b).

3

4                                    **STANDARDS**

5

6        **A.  Jurisdiction**

7        Federal courts are courts of limited jurisdiction, and are presumptively without

8  jurisdiction over civil actions.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375,

9  377 (1994).  The burden of establishing the contrary rests upon the party asserting

10 jurisdiction.  Id.  Because subject matter jurisdiction involves a court's power to hear a

11 case, it can never be forfeited or waived.  United States v. Cotton, 535 U.S. 625, 630

12 (2002).  Accordingly, lack of subject matter jurisdiction may be raised by either party at

13 any point during the litigation.  Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); see

14 also Int'l Union of Operating Eng'rs v. Cnty. of Plumas, 559 F.3d 1041, 1043-44 (9th Cir.

15 2009).  Lack of subject matter jurisdiction may also be raised by the district court sua

16 sponte.  Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999).  Indeed, "courts

17 have an independent obligation to determine whether subject matter jurisdiction exists,

18 even in the absence of a challenge from any party."  Id.; see Fed. R. Civ. P. 12(h)(3)

19 (requiring the court to dismiss the action if subject matter jurisdiction is lacking).

20       There are two types of motions to dismiss for lack of subject matter jurisdiction: a

21 facial attack, and a factual attack.  Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp., 594

22 F.2d 730, 733 (9th Cir. 1979).  Thus, a party may either make an attack on the

23 allegations of jurisdiction contained in the nonmoving party's complaint, or may

24 challenge the existence of subject matter jurisdiction in fact, despite the formal

25 sufficiency of the pleadings.  Id.

26       When a party makes a facial attack on a complaint, the attack is unaccompanied

27 by supporting evidence, and it challenges jurisdiction based solely on the pleadings.

28 Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  If the motion to

                                          4

1   dismiss constitutes a facial attack, the Court must consider the factual allegations of the

2   complaint to be true, and determine whether they establish subject matter jurisdiction.

3   Savage v. Glendale High Union Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir.

4   2003).  In the case of a facial attack, dismissal is warranted only if the nonmoving party

5   fails to allege an element necessary for subject matter jurisdiction.  Id.  However, in the

6   case of a facial attack, district courts "may review evidence beyond the complaint without

7   converting the motion to dismiss into a motion for summary judgment."  Safe Air for

8   Everyone, 373 F.3d at 1039.

9           In the case of a factual attack, "no presumptive truthfulness attaches to plaintiff's

10  allegations."  Thornill, 594 F.2d at 733 (internal citation omitted).  The party opposing the

11  motion has the burden of proving that subject matter jurisdiction does exist, and must

12  present any necessary evidence to satisfy this burden.  St. Clair v. City of Chico, 880

13  F.2d 199, 201 (9th Cir. 1989).  If the plaintiff's allegations of jurisdictional facts are

14  challenged by the adversary in the appropriate manner, the plaintiff cannot rest on the

15  mere assertion that factual issues may exist.  Trentacosta v. Frontier Pac. Aircraft Ind.,

16  Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting Exch. Nat'l Bank of Chi. v. Touche

17  Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976)).  Furthermore, the district court may

18  review any evidence necessary, including affidavits and testimony, in order to determine

19  whether subject matter jurisdiction exists.  McCarthy v. United States, 850 F.2d 558, 560

20  (9th Cir. 1988); Thornhill, 594 F.2d at 733.  If the nonmoving party fails to meet its

21  burden and the court determines that it lacks subject matter jurisdiction, the court must

22  dismiss the action.  Fed. R. Civ. P. 12(h)(3).

23          A court dismissing a complaint for lack of jurisdiction must then decide whether to

24  grant leave to amend.  Leave to amend should be "freely given" where there is no

25  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

26  to the opposing party by virtue of allowance of the amendment, [or] futility of the

27  amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

28  Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

5

1  be considered when deciding whether to grant leave to amend).  Not all of these factors

2  merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

3  carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

4  185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

5  "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group,

6  Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

7  1013 (9th Cir. 2005)); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

8  1989) ("Leave need not be granted where the amendment of the complaint . . .

9  constitutes an exercise in futility . . . .")).

10      **B. Preliminary Injunction**

11      "A preliminary injunction is an extraordinary and drastic remedy."  Munaf v. Geren,

12  553 U.S. 674, 690 (2008).    "[T]he purpose of a preliminary injunction is to preserve the

13  status quo between the parties pending a resolution of a case on the merits."

14  McCormack v. Hiedeman, 694 F.3d 1004, 1019 (9th Cir. 2012).  A plaintiff seeking a

15  preliminary injunction must establish that he is (1) "likely to succeed on the merits;" (2)

16  "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of

17  equities tips in his favor;" and (4) "an injunction is in the public interest."  Winter v.

18  Natural Res. Defense Council, 555 U.S. 7, 20 (2008) "If a plaintiff fails to meet its burden

19  on any of the four requirements for injunctive relief, its request must be denied."  Sierra

20  Forest Legacy v. Rey, 691 F. Supp. 2d 1204, 1207 (E.D. Cal. 2010) (citing Winter, 555

21  U.S. at 22).  "In each case, courts 'must balance the competing claims of injury and must

22  consider the effect on each party of the granting or withholding of the requested relief.'"

23  Winter, 555 U.S. at 24 (quoting Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987)).

24  A district court should enter a preliminary injunction only "upon a clear showing that the

25  plaintiff is entitled to such relief."  Winter, 555 U.S. at 22 (citing Mazurek v. Armstrong,

26  520 U.S. 968, 972 (1997)).

27      Alternatively, under the so-called sliding scale approach, as long as the plaintiff

28  demonstrates the requisite likelihood of irreparable harm and shows that an injunction is

1  in the public interest, a preliminary injunction can still issue so long as serious questions

2  going to the merits are raised and the balance of hardships tips sharply in the plaintiffs'

3  favor.  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011)

4  (concluding that the "serious questions" version of the sliding scale test for preliminary

5  injunctions remains viable after Winter).

6

7  **ANALYSIS**

8

9       Defendants' sovereign immunity argument, while not entirely convincing, raises

10  serious questions about the Court's jurisdiction over the Tribal Defendants.   The Court,

11  however, can provide Plaintiffs with the relief they seek by dismissing the Tribal

12  Defendants and allowing this action to go forward against Regina Cuellar in her

13  individual capacity.  As explained more fully below, the Court dismisses the Tribal

14  Defendants, finds that Federal Rule of Civil Procedure 19[1] does not mandate joinder,

15  and proceeds to the merits of Plaintiffs' Motion solely with respect to Defendant Cuellar.

16  As to their due process claim, the Court finds that Plaintiffs are entitled to preliminary

17  injunctive relief and GRANTS Plaintiffs' Motion with respect to Defendant Cuellar in her

18  individual capacity.[3]

19      **A.  The Court Declines To Exercise Jurisdiction Over The Tribal Defendants**

20       Defendants challenge the Court's jurisdiction to hear Plaintiffs' due process claim

21  on two grounds.  First, Defendants argue that the Tribal Defendants are immune from

22  suits for declaratory and injunctive relief under the doctrine of sovereign immunity.

23  Second, Defendants contend that to the extent that Plaintiffs' due process claim is

24  predicated on the Indian Civil Rights Act ("ICRA"), they can assert their due process

25  rights against the Tribal Defendants only by way of a habeas petition.

26
27      [1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

28      [3] Given the non-viability of Plaintiffs' challenge to the Tribal Court's jurisdiction, the Court refers only to their due process claim in discussing its jurisdiction.

Tribal sovereign immunity presents a jurisdictional question. See Cook v. AVI Casino Enterprises, Inc., 548 F.3d 718, 722 (9th Cir. 2008).  Generally, a plaintiff cannot bring a lawsuit in federal court against a tribe absent an express and unequivocal waiver of immunity by the tribe or abrogation of tribal immunity by Congress. Arizona Public Service Co. v. Aspaas, 77 F.3d 1128, 1133.  Tribal sovereign immunity extends to agencies of the tribe, Hagen v. Sisseston-Wahpeton Community College, 205 F.3d 1040, 1043 (8th Cir. 2000), and to tribal officials acting in their official capacity within the scope of their authority.[4]  Linneen v. Gila River Indian Community, 276 F.3d 489, 492 (9th Cir. 2002).  Based on these principles and the Supreme Court's reasoning in Santa Clara Pueblo v. Martinez, 436 U.S. 49 (1978), Defendants assert that Plaintiffs can only bring their due process challenge to the Tribal Court proceedings by way of a habeas petition pursuant to the Indian Civil Rights Act ("ICRA").  See id. at 56-61 (observing that the Fourteenth Amendment of the Constitution has not historically applied to Indian tribes and that habeas corpus is the only vehicle by which to challenge a claim covered by the ICRA).

Defendants' argument is not entirely persuasive.  Plaintiffs' due process claim does not seek an order enjoining the Tribe or its officials from governing its members, nor do they seek an order preventing the enforcement of the Tribal Court's June 3 Order on tribal lands.  Rather, Plaintiffs ask the Court to hold that the June 3 Order is not entitled to recognition by the state and federal governments.  ECF No. 51 at 7:4-8; ECF No. 7 at 14, ¶ D.

In light of Plaintiffs' requested relief, Santa Clara Pueblo is distinguishable.  That case dealt with a dispute between tribal members wherein female tribal members challenged sexist tribal policies that excluded them from tribal membership.  Santa Clara

---

[4] Although the Ex Parte Young doctrine carves out an exception to tribal sovereign immunity when a plaintiff brings a suit for prospective relief against tribal officers allegedly acting in violation of federal law, Plaintiffs have failed to allege that Judge Wiliams or Regina Cuellar are engaged in an ongoing violation of federal law.  See Burlington Northern & Santa Fe Railway Co. v. Vaughn, 509 F.3d 1085, 1092 (9th Cir. 2007). Plaintiffs' due process claim does not allege a violation of federal law because "tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority."  Santa Clara Pueblo v. Martinez, 436 U.S. 49, 56 (1978).

1  Pueblo, 436 U.S. at 52-53 (1978).  The plaintiffs sought to enjoin the enforcement of a

2  tribal ordinance.  Id.  In pertinent part, the Supreme Court noted that "even in matters

3  involving commercial disputes and domestic relations, we have recognized that

4  subject[ing] a dispute arising on the reservation among reservation Indians to a forum

5  other than the one they have established for themselves  may "undermine the authority

6  of the tribal court . . . [and hence] . . . [in]fringe on the right of the [I]ndians to govern

7  themselves." Id. at 59 (internal quotation marks and citations omitted).

8       Here, in contrast, Plaintiffs do not seek to force the Tribe, tribal officials, or the

9  Tribal Court to do anything or refrain from doing anything.  Instead, they seek a

10  declaration that the June 3 Order is unenforceable by non-tribal governmental entities.

11  Furthermore, there is no danger that hearing a dispute about the enforceability of a tribal

12  court order would undermine the authority of the tribal court to address internal disputes

13  about matters of tribal governance.  See id.  Rather, the focus of Plaintiffs' lawsuit is

14  whether the June 3 Order is enforceable against them by state, federal, or local

15  governments off of the reservation.  The relief Plaintiffs seek does not compel the Tribe

16  to act in a particular way, nor does it prevent the June 3 Order from remaining in effect

17  on the reservation.  Instead, granting a preliminary injunction will only prevent the June 3

18  Order from being enforced in state or federal courts.  Accordingly, the reasoning in Santa

19  Clara Pueblo does not support Defendants' sovereign immunity argument particularly

20  well.

21       National Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845 (1985)

22  seems to provide a better framework for the Court's understanding of its jurisdiction

23  here.  In that case, a Crow Indian minor was struck by a motor cycle in the parking lot of

24  the Lodge Grass Elementary school located on land owned by the state of Montana.  Id.

25  at 847.  The minor, through his guardian, filed suit in tribal court and obtained a default

26  judgment for $153,000.  The school district and its insurer then filed suit in federal district

27  court, alleging that the enforcement of the tribal court judgment would impair their

28  constitutional and statutory rights.  Id. at 848. The complaint named as defendants the

1    Crow Tribe of Indians, the tribal council, the tribal court, judges of the tribal court, and the

2    chairman of the tribal council.  It described the entry of the default judgment, alleged that

3    a writ of execution might issue on the following day, and asserted that a seizure of

4    school property would cause irreparable injury to the School District and would violate

5    the petitioners' constitutional and statutory rights. The District Court entered an order

6    restraining all the defendants "from attempting to assert jurisdiction over plaintiffs or

7    issuing writs of execution out of Cause No. Civ. 82–287 of the Crow Tribal Court until

8    this court orders otherwise."  Id.  Eventually, the district court entered a permanent

9    injunction, the basis of which was its finding that the tribal court lacked jurisdiction over

10   the tort that was the basis of the tribal court suit and default judgment.  Id. at 848-49.

11         The Supreme Court ultimately decided the case in favor of the Crow Tribe on

12   exhaustion grounds.  Id. at 857.  The Court implied, however, that if the plaintiffs in the

13   federal action had exhausted their tribal court remedies, the district court could have

14   granted injunctive and declaratory relief preventing enforcement of the judgment for lack

15   of jurisdiction.  See id. ("Until petitioners have exhausted the remedies available to them

16   in the Tribal Court system . . . it would be premature for a federal court to consider any

17   relief.").  It follows that if a federal court could issue declaratory and injunctive relief

18   against a Tribe, a Tribal Council, and a Tribal Court preventing enforcement of a

19   judgment obtained in excess of jurisdiction, it could issue the same relief against the

20   same defendants with respect to a judgment that violated non-tribal members' due

21   process rights.  This must be the case because foreign judgments are not entitled to be

22   enforced with full faith and credit if they are obtained either in excess of jurisdiction or

23   due to a failure to comport with due process.  See Wilson v. Marchington, 127 F.3d 805,

24   811 (9th Cir. 1997) ("A federal court must also reject a tribal judgment if the defendant

25   was not afforded due process of law.").

26         Indeed, Wilson v. Marchington provides additional support for Plaintiffs' position

27   that the court has jurisdiction to enter declaratory and injunctive relief against the

28   enforcement or recognition of the June 3 Order outside Defendants' reservation.  In

1    <u>Wilson</u>, the Ninth Circuit examined the question of "whether, and under what

2    circumstances, a tribal court tort judgment is enforceable in the United States courts."

3    <u>Id.</u> at 807.  The plaintiff in <u>Wilson</u> was a member of the Blackfeet Tribe.  She sued the

4    defendant in tribal court after a car accident, and obtained a judgment in her favor.

5    Claiming her judgment was entitled to full faith and credit, she filed suit in the U.S.

6    District Court for District of Montana to register her judgment in the federal court system.

7    The Ninth Circuit affirmed the District Court's holding that the judgment was not entitled

8    to recognition.  It noted that federal courts may not enforce tribal judgments under the

9    comity doctrine if they were obtained in excess of the tribal court's jurisdiction or after a

10   denial of due process.  <u>Id.</u> at 811 ("A federal court must also reject a tribal judgment if

11   the defendant was not afforded due process of law . . . . We demand that foreign nations

12   afford United States citizens due process of law before recognizing foreign judgments;

13   we must ask no less of Native American tribes."). It further observed that the due

14   process requirement was equally applicable where a plaintiff seeks to enforce a

15   judgment entitled to full faith and credit, as is required by the Indian Child Welfare Act

16   ("ICWA").  <u>See id.</u>; <u>see also</u> <u>Kremer v. Chemical Const. Corp.</u>, 456 U.S. 461, 482 (1982)

17   ("The State must, however, satisfy the applicable requirements of the Due Process

18   Clause.  A State may not grant preclusive effect in its own courts to a constitutionally

19   infirm judgment, and other state and federal courts are not required to accord full faith

20   and credit to such a judgment.")

21        Plaintiffs' argument based on <u>Wilson</u> and <u>National Farmers</u>, however, is an

22   inferential one.  The Court is not convinced that those inferences, logical though they

23   may be, satisfy Plaintiffs' burden of establishing jurisdiction in the face of the clear

24   statement of controlling authority that Indian tribes and their agents are immune from

25   civil suit in federal court.  <u>Arizona Public Service Co. v. Aspaas</u>, 77 F.3d 1128, 1133.

26   Given the limited nature of federal court jurisdiction, the Court's reluctance to potentially

27   expand that jurisdiction by accepting Plaintiffs' arguments, and the fact that effective

28   relief can be fashioned without the Tribal Defendants' participation, the Court declines to

1  exercise jurisdiction over them.  The Tribal Defendants are therefore DISMISSED from

2  this action for lack of jurisdiction.  Accordingly, the Court DENIES Plaintiffs' Motion as

3  moot with respect to the Tribal Defendants.

4      **B. Plaintiffs' Due Process Claim Can Proceed Against Regina Cuellar In Her**
         **Individual Capacity**

5

6      There is no genuine dispute that the doctrine of tribal sovereign immunity does

7  not apply to Defendant Cuellar in her individual capacity, and that the Court possesses

8  jurisdiction over her.  ECF No. 30 at 22:26-28.  Nevertheless, Defendants argue that

9  Cuellar should also be dismissed because the Tribal Defendants are indispensable

10  parties under Rule 19.  Id. at 22-23; ECF No. 32 at 27:15-32:10.  The Court finds

11  Defendants' argument unpersuasive.

12      More specifically, the Court agrees that the Tribal Defendants are required

13  parties under Rule 19(a)(1)(A).[5]  Plaintiffs have not provided the Court with any authority

14  that would limit the Tribal Defendants' ability to themselves seek enforcement of the

15  June 3 Order in state or federal court.  Assuming that they can do so, an injunction

16  issued against Cuellar alone would be insufficient to afford complete relief because the

17  Tribal Defendants could "possibly initiate further action to enforce" June 3 Order even if

18  that order were held unenforceable in this action.  E.E.O.C. v. Peabody Western Coal

19  Co., 400 F.3d 774, 780 (9th Cir. 2005).  Furthermore, the Court agrees that joinder of the

20  Tribal Defendants would be infeasible given its reluctant decision that they are immune

21  from suit here.

22      The Court disagrees, however, with Defendants' assertion that this action cannot

23  proceed against Defendant Cuellar as an individual in equity and good conscience.  See

24  Fed. R. Civ. P. 19(b).  In determining whether an action can proceed against a party

25  despite the infeasibility of joining required parties, courts apply a four-factor test:

26      [5] The Court rejects any suggestion that the Tribal Defendants are also required parties under Rule
27  19(a)(1)(B)(i).  The Tribal Defendants cannot have any interest in the enforceability of an order against
    non-tribal members in state or federal court if that order violates the non-members' due process rights.
    Furthermore, if such an interest is legitimate, Defendant Cuellar is more than capable of sufficiently
28  defending it in her individual capacity.

1       (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

2

3       (2) the extent to which any prejudice could be lessened or avoided by:

4           (A) protective provisions in the judgment;

5           (B) shaping the relief; or

6           (C) other measures;

7       (3) whether a judgment rendered in the person's absence would be adequate; and

8

9       (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

10  Id.; Makah Indian Tribe v. Verity, 910 F.2d 555, 560 (9th Cir. 1990).

11      The first factor favors Plaintiffs. Defendants appear to contend that the Tribe's

12  interest in regulating the custody of its minor members would be prejudiced without its

13  participation in this action. But Plaintiffs' requested relief on their due process claim

14  would do nothing to imperil the ability of the Tribal Court to continue issuing custody

15  orders in cases where, as here, it properly asserts jurisdiction. Nor would Plaintiffs'

16  requested relief compel the Tribal Defendants to do anything in regards to their ability to

17  regulate its members on tribal lands. See Santa Clara Pueblo, 436 U.S. at 59. Second,

18  to the extent Defendants contend they have an interest in the enforcement of a custody

19  order against non-tribal members residing off tribal lands, the Court disagrees. No tribe

20  has a legitimate interest in enforcing an order in state or federal courts if it was obtained

21  in tribal court without regard for the due process rights of such persons. If such an

22  interest exists, the time for the Tribal Defendants to protect it was during the custody

23  proceedings themselves. Third, if any of the Tribal Defendants' interests are implicated

24  by this action, Defendant Cuellar is well-positioned to defend them given her status as a

25  tribal member, a member of the Tribal Council, and the appointed guardian of the

26  Minors. Finally, Defendant Cuellar does not contend her own interests would be

27  prejudiced if the Tribal Defendants are not joined in this action. The prejudice factor

28

1  therefore favors Plaintiffs.[6]

2        The adequacy of the remedy factor also favors Plaintiffs.  Under this factor of the

3  Rule 19(b) test, a remedy can be adequate even if it is not complete.  <u>Makah Indian</u>

4  <u>Tribe</u>, 910 F.2d at 560.  Here, Plaintiffs' remedy against Cuellar would be adequate in

5  that it would prevent her from attempting to seek recognition of the June 3 Order in state

6  or federal court.  While that remedy would presumably not prevent the Tribal Defendants

7  from attempting to enforce the June 3 Order, it would complicate their ability to do so in

8  at least two ways.  First, a judgment from this Court holding that the June 3 Order is

9  unenforceable for failure to comport with Plaintiffs' due process rights would likely have

10  at least some persuasive effect on another judge assigned to determine the

11  enforceability of that Order.  Second, if the Tribal Defendants sought to have the June 3

12  Order recognized in the Superior Court for Tulare or El Dorado County, Plaintiffs would

13  likely be able to remove that proceeding to this Court under 28 U.S.C. § 1331 and relate

14  it to this case pursuant to Local Rule 123 for adjudication by the undersigned.  <u>See</u> Local

15  Rules of E.D. Cal., Rule 123; <u>see generally</u> <u>Wilson v. Marchington</u>, 127 F.3d 805 (9th

16  Cir. 1997); <u>National Farmers Union Ins. Cos. v. Crow Tribe of Indians</u>, 471 U.S. 845

17  (1985).  The same relation procedure would hold true if the Tribal Defendants sought

18  recognition of the June 3 Order in this Court in the first instance.  Accordingly, the Court

19  finds that while a judgment against Defendant Cuellar alone would not immediately

20  provide a <u>complete</u> remedy, the remedy would be more than <u>adequate</u> for Plaintiffs'

21  purposes.

22        Finally, Plaintiffs would lack an adequate remedy if this suit were dismissed

23  against Defendant Cuellar for nonjoinder.  Fed. R. Civ. P. 19(b)(4).  If Plaintiffs are

24  unable to litigate their meritorious due process claim here, they face two options.  The

25  first would be to sacrifice their right not to have an infirm foreign judgment enforced

26  against them by the state or federal governments by voluntarily returning the Minors to

27

28       [6] The Court's finding that the prejudice factor favors Plaintiffs makes it unnecessary to consider the second factor of the Rule 19(b) test.

1    an allegedly harmful environment.  Their second option, as defense counsel intimated at

2    the hearing on this Motion, would be to wait for the Tulare County Sheriff's Department

3    to collect the children (and possibly arrest Plaintiffs for kidnapping) pursuant to the June

4    3 Order.  See Cal. Penal Code § 278.  Both "remedies" are plainly inadequate.

5        Because all three relevant factors of the Rule 19(b) test favor Plaintiffs, the Court

6    concludes that this action may proceed solely against Defendant Cuellar in her individual

7    capacity.  Accordingly, the Court proceeds to the merits of Plaintiffs' Motion for

8    Preliminary Injunction.

9    **C. Plaintiffs Are Entitled To A Preliminary Injunction On Their Due Process Claim**

10

11       Although Defendants have failed to argue the merits of Plaintiffs' entitlement to a

12   preliminary injunction, the Court must independently determine whether it should

13   exercise its discretion to provide Plaintiffs with preliminary relief.  See Fed. R. Civ. P.

14   65(d)(1).  Concluding that the Plaintiffs are entitled to preliminary relief, the Court

15   ENJOINS Defendant Cuellar from seeking recognition or enforcement of the June 3

16   Order in state or federal court.

17       **1.  Plaintiffs are likely to succeed on the merits of their due process claim.**

18

19       The Indian Child Welfare Act ("ICWA") requires the United States and every state

20   to "give full faith and credit to the public acts, records, and judicial proceedings of any

21   Indian tribe applicable to Indian child custody proceedings to the same extent that such

     entities give full faith and credit to . . . the judicial proceedings of any other entity."[7]  25

22   U.S.C. § 1911(d).  Enforcing a foreign judgment entitled to full faith and credit requires

23   that the proceedings that led to the judgment comported with due process.  Kremer v.

24   Chemical Const. Corp., 456 U.S. 461, 482 (1982).  Furthermore, the California Family

25   Code requires a child custody determination made by a tribe to comply with due process

26

27       [7] Although there is a dispute as to whether the Tribal Court's June 3 Order is a child custody
     determination entitled to full faith and credit under ICWA, the comity doctrine that would otherwise apply
28   also requires due process.

1   in order to be enforced in state court.  Cal. Fam. Code § 3404(b)-(c); id. at §§ 3443,

2   3446; In re Marriage of Nurie, 176 Cal. App. 4th 478, 493 (Cal. Ct. App. 2009) ("The

3   requirements of due process of law are met in a child custody proceeding when, in a

4   court having subject matter jurisdiction over the dispute, the out-of-state parent is given

5   notice and an opportunity to be heard."); see also ECF No. 30-3 at 59 (citing California

6   Family Code).  At the federal constitutional level, the Supreme Court has endorsed the

7   existence of a significant liberty interest in extended family members' relationships with

8   children.  See Moore v. City of E. Cleveland, Ohio, 431 U.S. 494, 504 (1977) ("The

9   tradition of uncles, aunts, cousins, and especially grandparents sharing a household

10  along with parents and children has roots equally venerable and equally deserving of

11  constitutional recognition"); Troxel v. Granville, 530 U.S. 57, 65–66 (2000) ("It is cardinal

12  with us that the custody, care and nurture of the child reside first in the parents, whose

13  primary function and freedom include preparation for obligations the state can neither

14  supply nor hinder." (quoting Prince v. Massachusetts, 321 U.S. 158, 166 (1944)).

15          The core of the constitutional right to due process is a meaningful opportunity to

16  be heard before a person is deprived of a significant liberty interest.  LaChance v.

17  Erickson, 522 U.S. 262, 266 (1998); see also Wilson v. Marchington, 127 F.3d 805, 811

18  (1997) (due process requires an "opportunity for a full and fair trial before an impartial

19  tribunal that conducts the trial upon regular proceedings...and that there is no showing of

20  prejudice in the tribal court or in the system of governing laws.").  In this case, Plaintiffs

21  allege that they did not receive a fair opportunity to be heard because:

22          (1) The Tribal Court did not fully consider Plaintiffs' position in the guardianship

23              proceedings, and had no incentive to do so, because Judge Williams serves

24              at the pleasure of the Tribal Council, on which Defendant Cuellar serves as a

25              member;

26          (2) During the underlying proceedings, the Tribal Council passed an ordinance

27              specifically intended to benefit Regina Cuellar's guardianship petition;

28          (3) Judge Williams was biased in favor of the Tribe, as evidenced by: (a) her

1    statement that "Native Americans have felt that way about state court

2    proceedings for years and now you know how they felt" in response to

3    Plaintiffs claims of bias; and (b) her statement that she would not consider a

4    report by a therapist involved in the molestation accusations and that she only

5    wanted to hear from Tribal services;

6    (4) The law firm that represented Regina Cuellar in the guardianship proceedings

7    (Fredericks Peebles & Morgan) was also retained by the Tribe, the Tribal

8    Council, and the Tribal Court to assist and advise in legal matters affecting

9    them, thereby creating a conflict of interest; and

10    (5) Judge Williams refused to consider and rule upon several of Plaintiffs' legal

11    arguments, including that Regina Cuellar does not qualify as a foster parent

12    under California law due to evidence of domestic abuse in her home and

13    alcohol-related criminal convictions.

14    These allegations if true, would likely lead to a ruling that Plaintiffs were denied a

15    meaningful opportunity to be heard in Tribal Court.  Indeed, the multiple conflicts of

16    interest inherent in the custody proceeding, combined with Plaintiffs' as-yet unrefuted

17    allegations of Defendant Williams' expressions of bias, lead the Court to question

18    whether Plaintiffs can <u>ever</u> receive a meaningful opportunity to be heard in the Tribal

19    Court.[8]   The Court further doubts whether the Tribal Court is capable of considering the

20    best interests of the Minors given the aforementioned issues in the underlying

21    proceedings.  Accordingly, Plaintiffs have established a likelihood of success on the

22    ────────────

[8] The Court further observes that Defendants could have potentially refuted some of the questions
23    surrounding the hearing that led to the June 3 Order by providing audiotapes of the hearing to either this
Court or Plaintiffs.  They refused to do either, and Defendant Williams' refusal to release them to Plaintiffs
24    appears to have violated the Tribal Court's own Rules of Court.  <u>See</u> Shingle Springs Band of Miwok
Indians Tribal Court Rules of Court, Rule 1.5.B (<u>available at</u> shinglespringsrancheria.com/ssr/wp-
25    content/uploads/documents/tribal-court/Tribal%20Court%20Rules.pdf); ECF No. 47-1 at 4, ¶ 6.   The
adverse inference the Court may draw as a result of Defendants' refusal to provide these tapes further
26    supports the Court's finding that Plaintiffs are likely to succeed on the merits of their due process claim.
<u>See</u> <u>London v. Standard Oil Co. of California</u>, 417 F.2d 820, 824 (9th Cir. 1969) ("The rule upon which he
27    relies is that an unfavorable inference may result from the unexplained failure of a party to produce
documentary or other real evidence." (citing <u>Evis Manufacturing Company v. F.T.C.</u>, 287 F.2d 831, 847
28    (9th Cir. 1961); 2 Wigmore, Evidence, 285, 291 (3d Ed. 1940))).

1  merits of their due process claim.

2        On the other hand, Plaintiffs' jurisdictional claim is unlikely to succeed.  The

3  ICWA's jurisdictional scheme is relatively simple. A tribal court has exclusive jurisdiction

4  over child custody proceedings concerning Indian children who are domiciled on the

5  reservation.  25 USC § 1911(a).  "Section 1911(b), on the other hand, creates concurrent

6  but presumptively tribal jurisdiction in the case of children not domiciled on the

7  reservation: on petition of either parent or the tribe, state-court proceedings for foster

8  care placement or termination of parental rights are to be transferred to the tribal court,

9  except in cases of 'good cause,' objection by either parent, or declination of jurisdiction

10  by the tribal court."  <u>Mississippi Band of Choctaw Indians v. Holyfield</u>, 490 U.S. 30, 36

11  (1989).

12        Plaintiffs argue that ICWA does not provide the Tribal Court here with jurisdiction

13  for two reasons.  First, Plaintiffs argue that the Minors are not Indians.  They suggest

14  that because the Minors have only 1.2 percent Maidu blood, they cannot meet the

15  ICWA's definition of an Indian.  This argument is meritless.  The ICWA defines an "Indian

16  child" as "any unmarried person who is under age eighteen and is either (a) a member of

17  an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological

18  child of a member of an Indian tribe[.]"  25 U.S.C. § 1903(4).  A tribe's determination that

19  a child is a member of, or is eligible for membership in, a tribe is conclusive evidence

20  that a child is an Indian child within the meaning of the ICWA. Indian Child Custody

21  Proceedings, 44 Fed. Reg. 67,584, 67,586 (Bureau of Indian Affairs Nov. 26, 1979)

22  (guidelines for state courts). Neither enrollment nor blood quantum is required as long as

23  the child is recognized as a member of the tribe or as eligible for membership. <u>In re Riffle</u>

24  <u>(Riffle II)</u>, 922 P.2d 510, 512-13 (Mont. 1996).

25        There is no dispute that the Minors are members of the Tribe.  The Tribe's

26  determination that they are members is conclusive.  The fact that they are do not have a

27  large amount of Indian genetic heritage is irrelevant.  Under the ICWA, tribal

28  membership is a political affiliation rather than a matter of blood quantum.  Plaintiffs'

1  blood quantum argument therefore fails.

2          Second, Plaintiffs argue that the proceedings in the Tribal Court are not "child

3  custody proceedings" within the meaning of the ICWA.  See 25 U.S.C. § 1911.  They

4  may be correct, but their argument misses the point.  First, the ICWA is a federal statute

5  that applies to state courts when an Indian child is subjected to child custody

6  proceedings in state court.  It does not govern Indian tribes' ability to exercise jurisdiction

7  over its minor members.  Second, and regardless of whether the state has concurrent

8  jurisdiction over these guardianship proceedings, the Tribe's Family Code provides the

9  Tribal Court with jurisdiction over the Minors.  See ECF No. 30-3 at 90 (the Tribal Court

10  has "authority to appoint a guardian for a tribal member minor . . . whenever it is in the

11  best interests of the minor.").  The Superior Court for Tulare County accordingly declined

12  to exercise its concurrent jurisdiction over the Minors' custody, citing the Tribal Court's

13  pre-existing exercise of jurisdiction.[9]  It is thus clear that the Tribal Court had jurisdiction

14  to issue the June 3 Order appointing Regina Cuellar as the Minors' guardian.

15              **2.  Plaintiffs are likely to suffer irreparable harm in the absence of**
                    **preliminary relief.**
16

17          Plaintiffs easily establish the requisite level of harm to obtain a preliminary

18  injunction.  If Plaintiffs' allegations are true, three young children have been sexually

19  abused by a tribal family member in the recent past.  The instances of sexual abuse are

20  not isolated incidents.  The Minors' reports of sexually abusive conduct span the course

21  of nearly half a year.

22          Defendants have submitted a report, purportedly emanating from the El Dorado

23  County Health and Human Services agency, which they claim contradicts Plaintiffs'

24  allegations and affidavits of abuse.  ECF No. 30-3 at 68-83.  Plaintiffs' have objected to

25  the admissibility of that report.  ECF No. 51-1.  The Court has serious doubts about the

26  admissibility of the report, but declines to address Plaintiffs' objections at this time.

27  Instead, the Court finds that the report is not entitled to any weight whatsoever in

28          [9] In light of this Order, the Superior Court for Tulare County may wish to reconsider whether there
is good cause for it to assert jurisdiction over the Minors' guardianship proceedings.

1   determining whether Plaintiffs will suffer irreparable harm if an injunction does not issue.

2   The authors of the report based their finding that the Minors' accusations of abuse are

3   unfounded solely upon uncritical interviews with the accused abuser and his family.  The

4   authors never interviewed the Minors in connection with their investigation.  The

5   inadequacies of the authors' investigation are astounding, and the Court declines to

6   afford any consideration to their conclusions.[10]

7          Permitting enforcement of the Tribal Court's custody order would re-expose the

8   Minors to their alleged abuser.  The sexual exploitation of children is not only morally

9   repugnant, but results in long-lasting and serious harm for the rest of their lives.  See

10  U.S. v. Baker, 672 F. Supp. 2d 771, 773 (E.D. Tex. December 7, 2009).  Furthermore,

11  Plaintiffs have cared for the Minors and served as their guardians for an extended period

12  of time, and they have a close familial relationship.  ECF No. 7 at ¶ 12; ECF No. 11 at ¶

13  3.  The fact that the Minors will be re-exposed to their alleged abuser is emotionally

14  devastating for Plaintiffs as well as the Minors.  See ECF No. 11 at ¶ 22.  Accordingly,

15  Plaintiffs have met their burden of demonstrating that both they and the Minors will suffer

16  irreparable harm in the absence of preliminary relief.  Winter, 555 U.S. at 20 (2008).

17                    **3.  The balance of harms and the public interest favor the issuance of
                            a preliminary injunction.**

18

19         The balance of hardships tips sharply in Plaintiffs' favor.  Plaintiffs' Motion seeks

20  to maintain the status quo.  The Minors have apparently never lived on tribal lands, and

21  they have a close relationship with Plaintiffs.  They will suffer little, if any, harm from the

22  maintenance of the status quo.  Conversely, the Minors may be subjected to further

23  abuse if the Tribal Court's order is not enjoined from enforcement.  Furthermore,

24  Plaintiffs' right to due process will be jeopardized if an injunction does not issue, while

25  Defendant Cuellar cannot claim hardship because the Court enjoins her from attempting

26  ───────────────────────
      [10] Plaintiffs' submitted their own expert report in conjunction with their Reply brief.  ECF No. 51-2.
27  Defendants' objection to that report is well-taken, and accordingly SUSTAINED.  ECF No. 55 at 2-3.
    Plaintiffs have made numerous allegations and submitted numerous declarations in conjunction with their
    moving papers.  Those allegations and affidavits are sufficient to establish a likelihood of irreparable harm
28  without the Court's consideration of Plaintiffs' expert's declaration.

to enforce an apparently unenforceable order in state or federal court.   Finally, while the

public interest may favor the placement of tribal member minors with tribal member

guardians, it favors the prevention of child sexual abuse even more strongly.  Plaintiffs'

Motion is therefore GRANTED with respect to Defendant Cuellar in her individual

capacity.

**CONCLUSION**

Defendants Shingle Springs Band of Miwok Indians, the Shingle Springs Band of

Miwok Indians Tribal Council, the Shingle Springs Band of Miwok Indians Tribal Court,

Christine Williams, and Regina Cuellar in her official capacity as a member of the Tribal

Council are DISMISSED for lack of jurisdiction.  Plaintiffs' action may proceed against

Defendant Regina Cuellar in her individual capacity, and their Motion for Preliminary

Injunction (ECF No. 8) is GRANTED as to Defendant Regina Cuellar in her individual

capacity.  Defendant Cuellar is hereby ENJOINED from attempting to seek recognition or

enforcement of the Tribal Court's June 3 Order appointing her as permanent guardian of

the Minors outside of the Tribal Court pending a final disposition of this action on the

merits.

IT IS SO ORDERED.

Dated:  September 2, 2016

MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE